Docket No. 88110–Agenda 23–May 2000.

COMMONWEALTH EDISON COMPANY, Appellant, v.

 WILL COUNTY COLLECTOR, Appellee.

Opinion filed May 3, 2001.

JUSTICE McMORROW delivered the opinion of the court:

In 1994, the General Assembly enacted tax rate amendments to section 5–1024 of the Counties Code (55 ILCS 5/5–1024 (West 1994)) and section 9–107 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/9–107 (West 1994)). The issue presented in this case is whether these amendments should be applied to certain tax levies that were adopted by Will County shortly before the amendments became effective. The appellate court concluded that the amendments should be so applied. 305 Ill. App. 3d 819. For the reasons that follow, we affirm.

BACKGROUND

Section 5–1024 of the Counties Code (55 ILCS 5/5–1024 (West 1994)) grants the authority to non-home-rule counties, such as Will County, to levy property taxes for what is commonly referred to as general corporate purposes. Section 5–1024 also sets a limit on the amount of taxes that a county may raise for such purposes. This limit is expressed as a rate, specifically, a percentage of the value of taxable property as equalized or assessed by the Department of Revenue. Prior to 1995, the rate at which Will County could levy for its general corporate fund (the general corporate rate limitation) was set at $0.25 per $100 of assessed valuation.

While section 5–1024 authorizes levies for general corporate funds, various other statutory provisions authorize levies for more specific purposes. Among these other statutory provisions is section 9–107 of the Tort Immunity Act (745 ILCS 10/9–107 (West 1994)). Section 9–107 provides that a local public entity may levy property taxes to cover the cost of insuring or otherwise defending itself against workers’ compensation claims and tort claims for which the local public entity is liable under the Tort Immunity Act.

Section 5–1024 of the Counties Code lists many of the taxes that a county is statutorily authorized to levy for specific purposes and further provides that these taxes are exempt from the general corporate rate limitation. Before 1995, however, taxes for workers’ compensation and tort immunity defense funds that were authorized by section 9–107 of the Tort Immunity Act were not listed under section 5–1024 as being exempt from the general corporate rate limitation.

In 1993, our appellate court held that, under the then-existing language of section 5–1024 of the Counties Code and section 9–107 of the Tort Immunity Act, property taxes levied by a non-home-rule county for tort liability insurance had to be included within the general corporate rate limitation established under section 5–1024. See 
In re Application of the Du Page County Collector
, 243 Ill. App. 3d 823 (1993). Taxes levied for tort liability insurance were held void “to the extent the general corporate tax rate would have exceeded the maximum rate [under section 5–1024] if the liability insurance rate had been included in the general corporate rate.” 
Du Page County Collector
, 243 Ill. App. 3d at 825.

In response to this decision, in January of 1994, House Bill 2627 was introduced in the Illinois House of Representatives. This bill added language to both section 5–1024 of the Counties Code and section 9–107 of the Tort Immunity Act which makes it clear that taxes for workers’ compensations funds and tort immunity defense funds are excluded from the general corporate rate limitation. House Bill 2627 was passed in the General Assembly on May 29, 1994. On June 27, 1994, the Governor signed House Bill 2627 into law as Public Act 88–545 (Act). The effective date of the Act was January 1, 1995.

On November 17, 1994, approximately six weeks prior to the Act’s effective date, Will County adopted its 1994 levies for its corporate fund, tort immunity insurance fund and workers’ compensation fund. After January 1, 1995, the Will County clerk extended these levies against the assessed values of property within the county. The rates of the levies, as certified by the county clerk, were $0.25 for the general corporate fund, $0.0223 for the workers’ compensation fund, and $0.0155 for the tort immunity insurance fund. The total rate of these three levies was $0.2878 per $100 of assessed valuation.

The plaintiff, Commonwealth Edison Company (Edison), paid the first installment of its 1994 Will County property taxes on June 1, 1995, and the second installment on September 1, 1995. On November 3, 1995, Edison filed a tax objection complaint in the circuit court of Will County. Citing to 
Du Page County Collector
, 243 Ill. App. 3d 823, Edison asserted that Will County’s 1994 levies for its tort immunity insurance and workers’ compensation funds had to be included within the county’s general corporate rate limitation and, therefore, that Will County had exceeded the corporate rate limitation of $0.25 by a total of $0.0378 (the combination of the workers’ compensation rate and the tort immunity insurance rate). Thus, according to Edison, Will County’s 1994 tax levies for its workers’ compensation and tort immunity insurance funds were illegal and void. The circuit court sustained Edison’s objection. In so doing, the court rejected an argument advanced by defendant, the Will County collector (collector), that the amendments to section 5–1024 and section 9–107 enacted by the General Assembly in Public Act 88–545 should be applied retroactively to validate the levies.

The appellate court reversed. 305 Ill. App. 3d 819. The appellate court concluded that the plain language of the amendments to sections 5–1024 and 9–107 indicated that the General Assembly intended the amendments to be applied to levies adopted prior to January 1, 1995, and, therefore, that the Will County levies were legally valid. The appellate court also determined that, because no vested right was involved, the application of the amendments to the levies did not violate Edison’s rights under the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, §2). We granted Edison’s petition for leave to appeal.177 Ill. 2d R. 315(a).

ANALYSIS

Before discussing the merits of this appeal, we address a preliminary procedural matter.

After oral arguments were held in this cause, Edison and the collector filed in this court an “Agreed Motion for Leave to Substitute Named Party.” In this motion, Edison and the collector stated that Edison had “settled its claim” with the collector. Edison and the collector then asked this court to substitute another company, Illinois Bell Telephone Company/Ameritech, for Edison as “the named party appellant.” According to a sworn statement made within the motion, Illinois Bell was one of numerous tax objectors who brought the instant appeal. On the basis of this representation, the motion was allowed, and an order substituting “Illinois Bell Telephone Company/Ameritech as the named party appellant” was entered by this court on November 16, 2000.

Upon subsequent review of the record, however, and following the issuance of a rule to show cause and the filing of an answer, this court has determined that the statement made in the agreed motion that numerous tax objectors were involved in this appeal was incorrect. At the time the agreed motion for substitution of named party was filed, the only parties to this cause were Edison and the collector. Because Illinois Bell was not, in fact, a party to the present action or the judgment appealed from, we have concluded that the motion to substitute Illinois Bell as the “named party appellant” was improvidently granted. Therefore, simultaneously with this opinion, an order has been issued vacating the order substituting “Illinois Bell Telephone Company/Ameritech as the named party appellant.”

As noted, in the “Agreed Motion for Leave to Substitute Named Party,” Edison and the collector stated that Edison has settled its tax objection claim. Notably, neither party sought, as Edison’s counsel should have sought, to dismiss Edison from this proceeding. Nor did either party indicate that this appeal might be moot.

However, even assuming that the instant appeal is moot, we choose to address the merits of the case pursuant to the public interest exception to the mootness doctrine. Whether statutory amendments that affect tax rates should be given retroactive application is an issue of substantial public importance, the issue is likely to recur, and, as will be discussed below, our case law regarding the retroactive application of statutory amendments is in conflict. See 
In re D.L.
, 191 Ill. 2d 1, 8 (2000). Accordingly, 
we turn to the merits.

At issue in this case is whether the tax rate amendments to section 5–1024 of the Counties Code and section 9–107 of the Tort Immunity Act should be applied to levies that were adopted by Will County for its workers’ compensation and tort immunity defense funds approximately six weeks before the amendments became effective. In order to resolve this issue, we must consider and apply the legal principles that govern the retroactive application of statutory amendments. Unfortunately, however, recent decisions of this court, beginning with 
First of America Trust Co. v. Armstead
, 171 Ill. 2d 282 (1996), have left these principles “in the state of some muddle.”
 Kopec v. City of Elmhurst
, 193 F.3d 894, 906 (7th Cir. 1999) (Posner, C.J., dissenting).

In 
Armstead
, this court addressed whether a newly enacted statutory amendment should be applied in that appeal. Recognizing that the principles for determining whether a statutory amendment applies to an existing controversy on appeal had “not been consistently stated” (
Armstead
, 171 Ill. 2d at 287-88), this court set out to clarify this area of the law. The court began its effort by examining prior case law that had addressed the issue of retroactivity. The court determined that previous opinions had generally followed one of two different approaches to retroactivity, either the “legislative intent approach” or the “vested rights approach.” Generally stated, under the legislative intent approach, statutory amendments are presumed to operate prospectively unless the ‘ “express language or necessary implication’ ” of the amendment “ ‘clearly indicate[s] that the legislature intended a retroactive application.’ ” 
Armstead
, 171 Ill. 2d at 288, quoting 
Rivard v. Chicago Fire Fighters Union, Local No. 2
, 122 Ill. 2d 303, 309 (1988). Under the vested rights approach, in contrast, legislative intent is “largely ignored.” 
Armstead
, 171 Ill. 2d at 289. Instead, the law is applied as it exists at the time of the appeal unless to do so would interfere with a vested right, 
i.e.
, an interest protected from legislative interference by the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, §2). 
Armstead
, 171 Ill. 2d at 289.

After setting forth the two lines of case law, this court in
 Armstead
 held that the vested rights approach to retroactivity was “the better approach.” 
Armstead
, 171 Ill. 2d at 289. The court reached this conclusion based upon its understanding of “true” retroactivity. The 
Armstead
 court noted that “ ‘a statute is not retroactive just because it relates to antecedent events, or because it draws upon antecedent facts for its operation.’ ” 
Armstead
, 171 Ill. 2d at 289-90, quoting
 United States Steel Credit Union v. Knight
, 32 Ill. 2d 138, 142 (1965). Instead, a retroactive change in the law is defined as ‘ “ ‘one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past.’ ” ’
 Armstead
, 171 Ill. 2d at 290, quoting
 United States Steel Credit Union
, 32 Ill. 2d at 142, quoting 82 C.J.S.
 Statutes
 §412 (1953). Accordingly, the 
Armstead
 court observed that “[w]here no vested rights are involved, either because they are not yet perfected or because the amendment is procedural in nature, the amendment can be applied to the existing controversy without any retroactive impact.” 
Armstead
, 171 Ill. 2d at 290. Applying this definition of
 
retroactivity, the 
Armstead 
court concluded that “there is little reason to focus on legislative intent.” 
Armstead
, 171 Ill. 2d at 290. Rather, “a reviewing court should simply apply the law as its exists at the time of the appeal, unless doing so would interfere with a vested right.” 
Armstead
, 171 Ill. 2d at 290. See also 
Dardeen v. Heartland Manor, Inc.
, 186 Ill. 2d 291 (1999) (applying the 
Armstead
 vested rights approach); 
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 402-06 (1998) (same).

Although 
Armstead
 adopted the vested rights approach to retroactivity, subsequent decisions from this court have continued to focus on legislative intent to resolve questions concerning the retroactive application of newly enacted legislation. For example, in 
Atkins v. Deere & Co.
, 177 Ill. 2d 222 (1997), this court was asked to determine whether the repeal of the Structural Work Act (740 ILCS 150/0.01 
et seq
. (West 1994)) was retroactive. In answering this question in the negative, the court looked solely at legislative intent, rather than vested rights. 
Atkins
, 177 Ill. 2d at 233 n.2. No mention was made of 
Armstead
 or of that opinion’s rejection of the legislative intent approach to retroactivity. See P. Phillips & A. Zahaykevich, 
Prospective-Only Repeal of the Structural Work Act–and a New Approach to Saving Clauses?
, 86 Ill. B.J. 76, 80 (1998) (“In [
Armstead
] the supreme court said the vested rights approach was better than the legislative intent approach. In 
Atkins
, the court obviously followed the legislative intent approach”); R. Feldmeier, 
Armstead and Its Progeny: The Illinois Supreme Court’s ‘Vested Rights’ Approach to the Application of Statutory Amendments to Pre-existing Cases or Causes of Action
, 25 S. Ill. U. L.J. 95, 124-26 (2000) (noting that the analysis in 
Atkins
 was based on legislative intent rather than vested rights).

Similarly, in 
People v. Digirolamo
, 179 Ill. 2d 24 (1997), in setting forth the rules for determining whether a new statutory amendment should be applied in that appeal, this court did not refer to 
Armstead
 or the vested rights approach to retroactivity. Instead, reference was made exclusively to the legislative intent approach. 
Digirolamo
, 179 Ill. 2d at 50. See also 
White v. Sunrise Healthcare Corp.
, 295 Ill. App. 3d 296, 299 (1998) (noting conflict between 
Digirolamo
 and
 Armstead
); 25 S. Ill. U. L.J. at 123-24 (noting that 
Digirolamo
 followed the legislative intent rather than vested rights approach).

In an effort to resolve the conflict between the principles espoused in 
Armstead
, and those set forth in 
Atkins
 and 
Digirolamo
, several members of this court have proposed that we adopt the approach to retroactivity endorsed by the United States Supreme Court in 
Landgraf v. USI Film Products
, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). See 
Premier Property Management, Inc. v. Chavez
, 191 Ill. 2d 101, 117 (2000) (Freeman, J., specially concurring, joined by McMorrow, J.); 
People v. Ramsey
, 192 Ill. 2d 154, 159 (2000) (Bilandic, J., specially concurring); 
Ramsey
, 192 Ill. 2d at 174 (Freeman, J., specially concurring, joined by McMorrow, J.); 
Johnson v. Halloran
, No. 89594, slip op. at 6 (December 1, 2000) (Bilandic, J., specially concurring, joined by Freeman and McMorrow, JJ.).

In 
Landgraf
, the Supreme Court confronted many of the same issues regarding retroactivity and statutory interpretation with which this court has struggled. In particular, the Court addressed the “apparent tension” between “the rule that ‘a court is to apply the law in effect at the time it renders its decision,’ [citation]” and “the axiom that ‘[r]etroactivity is not favored in the law,’ and its interpretive corollary that ‘congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.’ [Citation.] ” 
Landgraf
, 511 U.S. at 264, 128 L. Ed. 2d at 251, 114 S. Ct. at 1496. The Court resolved the “tension” between these rules by adopting the following test for determining when a new federal statute will be applied to existing controversies:

“When a case implicates a federal statute enacted after the events in suit, the court’s first task is to determine whether Congress has expressly prescribed the statute’s proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect,
 i.e.
, whether it would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern ***.” 
Landgraf
, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505.

See also
 Martin v. Hadix
, 527 U.S. 343, 352, 144 L. Ed. 2d 347, 356-57, 119 S. Ct. 1998, 2003 (1999) (restating the same test).

In this test, the Supreme Court reaffirmed the “traditional rule” that new “statutes do
 not
 apply retroactively
 unless
 Congress expressly states that they do.” (Emphasis in original.)
 Plaut v. Spendthrift Farm, Inc.
, 514 U.S. 211, 237, 131 L. Ed. 2d 328, 354, 115 S. Ct. 1447, 1461-62 (1995). The Court explained the importance of requiring the legislature to clearly indicate the temporal reach of newly enacted legislation:

“The presumption against statutory retroactivity had special force in the era in which courts tended to view legislative interference with property and contract rights circumspectly. In this century, legislation has come to supply the dominant means of legal ordering, and circumspection has given way to greater deference to legislative judgments. [Citations.] But while the 
constitutional
 impediments to retroactive civil legislation are now modest, prospectivity remains the appropriate default rule. Because it accords with widely held intuitions about how statutes ordinarily operate, a presumption against retroactivity will generally coincide with legislative and public expectations. Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.” (Emphasis in original.)
 Landgraf
, 511 U.S. at 272-73, 128 L. Ed. 2d at 256-57, 114 S. Ct. at 1500-01.

Under the 
Landgraf
 test, if the legislature has clearly indicated what the temporal reach of an amended statute should be, then, absent a constitutional prohibition, that expression of legislative intent must be given effect. However, when the legislature has not indicated what the reach of a statute should be, then the court must determine whether applying the statute would have a retroactive impact, 
i.e.
, “whether it would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.”
 Landgraf
, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505. If there would be no retroactive impact, as that term is defined by the court, then the amended law may be applied.
 Landgraf
, 511 U.S. at 273-74, 275, 128 L. Ed. 2d at 257, 258, 114 S. Ct. at 1501, 1502. If, however, applying the amended version of the law would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied. 
Landgraf
, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505.

As examples of statutory changes that normally do not have a retroactive impact, the Court mentioned statutes that affect jurisdiction and statutes that affect certain procedural rules. 
Landgraf
, 511 U.S. at 273-76, 128 L. Ed. 2d at 257-59, 114 S. Ct. at 1501-03. The Court also observed:

“A statute does not operate ‘retrospectively’ merely because it is applied in a case arising from conduct antedating the statute’s enactment [citation] or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates ‘retroactively’ comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have ‘sound ... instinct[s],’ [citation] and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.”
 Landgraf
, 511 U.S. at 269-70, 128 L. Ed. 2d at 254-55, 114 S. Ct. at 1499.

We have carefully considered the principles discussed in 
Landgraf
 and conclude that the approach to retroactivity described in that opinion provides the appropriate means of determining when new legislation should be applied to existing controversies. We further observe that the 
Landgraf
 test adequately resolves the “tension” reflected in our case law in decisions such as 
Armstead
, 
Atkins
 and 
Digirolamo
. Accordingly, we hereby adopt the approach to retroactivity set forth in 
Landgraf
.

Pursuant to 
Landgraf
, our first task in the case at bar is to determine whether the General Assembly has “expressly prescribed” (
Landgraf
, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. at 1505) the temporal reach of the amendments to sections 5–1024 and 9–107. To answer this question, we turn to the language of the amendments.

Section 5–1024 of the Counties Code states, in part:

“A county board may cause to be levied and collected annually, except as hereinafter provided, taxes for county purposes, including all purposes for which money may be raised by the county by taxation, *** at a rate not exceeding .25% ***.” 55 ILCS 5/5–1024 (West 1994).

Public Act 88–545 amended section 5–1024 by adding the following language:

“except taxes levied under Section 9–107 of the Local Governmental and Governmental Employees Tort Immunity Act.

Those taxes a county has levied and excepted from the rate limitation imposed by this Section or Section 25.05 of ‘An Act to revise the law in relation to counties’, approved March 31, 1874, in reliance on this amendatory Act of 1994 are not invalid because of any provision of this Section that may be construed to or may have been construed to restrict or limit those taxes levied and those taxes are hereby validated. This validation of taxes levied applies to all cases pending on or after the effective date of this amendatory Act of 1994.” Pub. Act 88–545, §5, eff. January 1, 1995 (amending 55 ILCS 5/5–1024 (West 1992)).

Public Act 88–545 amended section 9–107 of the Tort Immunity Act by adding the following language:

“With respect to taxes levied under this Section, either before, on, or after the effective date of this amendatory Act of 1994:

(1) Those taxes are excepted from and shall not be included within the rate limitation imposed by law on taxes levied for general corporate purposes by the local public entity authorized to levy a tax under this Section.

(2) Those taxes that a local public entity has levied in reliance on this Section and that are excepted under paragraph (1) from the rate limitation imposed by law on taxes levied for general corporate purposes by the local public entity are not invalid because of any provision of the law authorizing the local public entity’s tax levy for general corporate purposes that may be construed or may have been construed to restrict or limit those taxes levied, and those taxes are hereby validated. This validation of taxes levied applies to all cases pending on or after the effective date of this amendatory Act of 1994.” Pub. Act 88–545, §10, eff. January 1, 1995 (amending 745 ILCS 10/9–107 (West 1992)).

Edison argues that the General Assembly did not intend for the amendments to sections 5–1024 and 9–107 to apply to levies adopted prior to the amendments’ effective date. Edison notes that Public Act 88–545 was signed into law on June 27, 1994, but that the effective date of the Act was delayed until January 1, 1995. Edison maintains that if the General Assembly had intended that the amendatory provisions in Public Act 88–545 be applied to levies made in November of 1994, “it would have made [the Act] effective immediately upon signature of the Governor on June 27, 1994.”

Edison also observes that the amendatory language of sections 5–1024 and 9–107 states that the amendments apply to levies made “in reliance on” the “amendatory Act of 1994.” The amendatory language of section 5–1024 provides:

“Those taxes a county has levied and excepted from the rate limitation imposed by this Section *** in reliance on this amendatory Act of 1994 *** are hereby validated.” Pub. Act 88–545, §5, eff. January 1, 1995 (amending 55 ILCS 5/5–1024 (West 1992)).

Similar language is found in the amendment to section 9–107, which states, “Those taxes that a local public entity has levied in reliance on this Section *** are hereby validated.” Pub. Act 88–545, §10, eff. January 1, 1995 (amending 745 ILCS 10/9–107 (West 1992)).

Edison contends that, since the amendments did not become effective until January 1, 1995, the amendments could not, in fact, be “relied upon” to validate levies enacted in November 1994. Therefore, according to Edison, the General Assembly must have intended the amendments to have a prospective effect. We disagree.

As the collector points out, there is no logical reason why a county could not “levy in reliance on a statute which has been enacted into law but prior to the law’s effective date where the law specifically provides that a levy made prior to the effective date in reliance on the law is validated.” Further, while Edison is correct in noting that the postponement of an effective date may, as a general matter, constitute evidence that the legislature intended the amendment to have a prospective application (see, 
e.g.
, 
People v. Ramsey
, 192 Ill. 2d 154, 174 (2000) (Freeman, J., specially concurring, joined by McMorrow, J.) (and authorities cited therein)), that general rule may not, in this case, trump the plain language of the amendments to sections 5–1024 and 9–107.

Both the amendment to section 5–1024 and the amendment to section 9–107 expressly state that the amendments’ validation of taxes “applies to all cases pending on or after the effective date of this amendatory Act of 1994.” The tax objection brought by Edison in this case was filed in late 1995 and, thus, was pending after the effective date of the Act. Moreover, the amendment to section 9–107 expressly validates levies adopted “either before, on or after the effective date of [the Act].” This statement is an unequivocal expression of legislative intent. The General Assembly clearly intended to validate levies, such as those at issue in the case at bar, that were enacted prior to the amendments’ effective date.

Edison argues, however, that, even if the General Assembly intended the amendments to sections 5–1024 and 9–107 to be applied to Will County’s November levies, that intent may not be given effect here. According to Edison, the amendments may not be applied to the November levies because to do so would violate Edison’s rights under the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2).

“A retroactive tax measure does not necessarily violate the due process provisions of either the Illinois or the Federal constitution (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 2). A court must consider the nature of a tax measure and the circumstances leading to its adoption before the court may determine ‘that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation.’ ” 
General Telephone Co. v. Johnson
, 103 Ill. 2d 363, 378-79 (1984), quoting 
Welch v. Henry
, 305 U.S. 134, 147, 83 L. Ed. 87, 93, 59 S. Ct. 121, 126 (1938); see also 2 N. Singer, Sutherland on Statutory Construction §41.10 at 412 (5th 
ed. 1993) (“If the retroactive feature of a tax law is arbitrary and burdensome, the statute will not be sustained. The reasonableness of each retroactive tax statute depends on the circumstances of each case”).

In determining whether a retroactive tax measure is “ ‘so harsh and oppressive as to transgress the constitutional limitation’ ” (
General Telephone Co.
, 103 Ill. 2d at 379, quoting 
Welch
, 305 U.S. at 147, 83 L. Ed. at 93, 59 S. Ct. at 126), courts have considered such factors as the legislative purpose in enacting the amendment (see, 
e.g.
, 
United States v. Carlton
, 512 U.S. 26, 32, 129 L. Ed. 2d 22, 29, 114 S. Ct. 2018, 2023 (1994); 
Landgraf
; 511 U.S. at 266-67, 128 L. Ed. 2d at 253, 114 S. Ct. at 1497-98 (noting that legislative purpose is a concern with retroactive legislation because the legislature “may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals”)), the length of the period of retroactivity (see, 
e.g.
, 
Carlton
, 512 U.S. at 32-33, 129 L. Ed. 2d at 29-30, 114 S. Ct. at 2023), whether the taxpayer reasonably and detrimentally relied on the prior law (see, 
e.g.
, 
General Telephone Co.
, 103 Ill. 2d at 379), and whether the taxpayer had adequate notice of the change in the law (see, 
e.g.
, 
General Telephone Co.
, 103 Ill. 2d at 379).

Parenthetically, we note that the United States Supreme Court has strictly limited the scope of inquiry under the due process clause of the federal constitution, holding that neither lack of notice nor detrimental reliance are “dispositive” factors in determining whether the retroactive application of a tax amendment violates the due process clause of the federal constitution. See 
Carlton
, 512 U.S. at 33-34, 129 L. Ed. 2d at 30-31, 114 S. Ct. at 2023; see also C. Hochman, 
The Supreme Court and the Constitutionality of Retroactive Legislation
, 73 Harv. L. Rev. 692, 706 (1960) (“The Court has been extremely reluctant to override the legislative judgment as to the necessity for retroactive taxation”). We need not decide, in this case, whether the due process clause of the Illinois Constitution is similarly limited. Even if we give full consideration to all the factors noted above, it is clear that no due process violation would occur if the amendments to section 5–1024 and 9–107 were applied to Will County’s November levies.

First, no argument has been made, and there is nothing of record which indicates, that the purpose of the General Assembly in enacting the amendments to section 5–1024 and 9–107 was “illegitimate or arbitrary.” See 
Carlton
, 512 U.S. at 32, 129 L. Ed. 2d at 29, 114 S. Ct. at 2023. The General Assembly was correcting a law, not “targeting” a group of taxpayers for retribution or other illegitimate purposes. See 
Carlton
, 512 U.S. at 32, 129 L. Ed. 2d at 29, 114 S. Ct. at 2023. Second, as applied to Will County’s November levies, the period of retroactivity of the amendments is extremely modest, going back only six weeks from the amendments’ effective date. See 
Carlton
, 512 U.S. at 33, 129 L. Ed. 2d at 30, 114 S. Ct. at 2023 (upholding a retroactive tax amendment where “the actual retroactive effect” of the amendment “extended for a period only slightly greater than one year”). Third, no argument has been made, and there is nothing of record which indicates, that Edison detrimentally relied upon the tax rate that existed prior to the enactment of the amendments. This is not surprising, given that the first installment of Edison’s 1994 tax bill was not due, and was not paid, until June 1995, some six months after the amendments’ effective date. Finally, Edison had adequate notice of the impending amendatory change in the tax rate. The amendments, which clearly state that they will apply to validate levies such as those in the case at bar, became law in June of 1994, months before the November levies were adopted. Thus, in sum, there is nothing in the instant case which indicates that the application of the amendments to the November levies would be “ ‘harsh and oppressive’ ” (
General Telephone Co.
, 103 Ill. 2d at 379, quoting 
Welch
, 305 U.S. at 147, 83 L. Ed. at 93, 59 S. Ct. at 126) or, indeed, unfair in any sense.

Edison also argues, however, that application of the amendments to sections 5–1024 and 9–107 to the November levies is foreclosed by this court’s decision in 
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 402-06 (1998). At issue in 
Henrich
 was whether a new amendment to section 3–108(a) of the Tort Immunity Act (745 ILCS 10/3–108(a) (West 1994)) applied on appeal to a claim brought by the plaintiff that alleged willful and wanton misconduct on the part of the defendant high school. Under the amendatory language, the plaintiff’s claim was properly brought. Without the amendatory language, the school district was immunized from claims alleging willful and wanton misconduct and plaintiff’s claim was barred. 
Henrich
, 186 Ill. 2d at 395.

Applying 
Armstead
, this court held that the amendment to section 3–108(a) did not apply to the controversy on appeal because the school district had a vested right to the immunity afforded by section 3–108(a) as it existed when the cause of action arose. 
Henrich
, 186 Ill. 2d at 405. The court stated:

“This court has agreed with the view that ‘ “an exemption from a demand or an immunity from prosecution in a suit is as valuable to the one party as the right to the demand or to prosecute the suit is to the other.” ’ [Citation.] Thus, it has long been recognized that ‘[a] vested ground of defense is as fully protected from being cut off or destroyed by an act of the legislature as is a vested cause of action.’ [Citations.] Put simply, the legislature lacks the power to reach back and breathe life into a previously barred claim. [Citations.]

When this cause of action arose, the school district’s immunity under the unamended section 3–108 was ‘unconditional,’ and ‘ “immediate, fixed and determinate” ’ [citation]; it did not depend on the entry of a judgment. Thus, the school district’s right to the total immunity provided by the unamended section 3–108 vested when the cause of action accrued. [Citation.] The amended section 3–108 cannot reach back and take that vested right away, impose a new duty on the school district, and breathe life into this previously barred claim.” 
Henrich
, 186 Ill. 2d at 404-05.

Edison argues that its objection to Will County’s November 1994 levies, based on the holding of 
In re Application of the Du Page County Collector
, 243 Ill. App. 3d 823 (1993), was a “defense” identical to the school district’s defense that it was immune from liability in 
Henrich
. Edison emphasizes that the validity of a tax rate is determined at the time of the levy. See, 
e.g.
, 
People ex rel. Carr v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.
, 316 Ill. 410, 414 (1925) (“[W]hen a tax is once ordered or laid, its extension,–a ministerial function,–must be at a rate not exceeding that authorized when the levy was made”). Edison argues, therefore, that its defense against the tax rates accrued on November 17, 1994, the date Will County adopted its levies. According to Edison, on that date, its tax defense was as “unconditional, immediate, fixed and determinate” as the school district’s tort immunity defense in 
Henrich
. Thus, Edison maintains that its tax defense vested on November 17, 1994, and that the due process clause of the Illinois Constitution prevents the amendments to section 5–1024 and 9–107 from “reaching back and taking [its] vested right away.”

Initially, we note that 
Henrich
 was decided under the principles espoused in 
Armstead
 rather than those set forth in 
Landgraf
. Nevertheless, 
Henrich
 remains relevant in this case insofar as it defines those interests that are protected from legislative interference by the due process clause of the Illinois Constitution. With this understanding in mind, we consider the holding of 
Henrich
.

In assessing whether the application of a new statutory amendment to an existing controversy violates due process, the question is not simply whether the “ ‘rights’ allegedly impaired are [labeled] ‘vested’ or ‘non-vested.’ ” 
In re Marriage of Semmler
, 107 Ill. 2d 130, 137 (1985). Rather,

“[t]he question of the validity of the application of a statute rests on subtle judgments concerning the fairness or unfairness of applying the new statutory rule to affect interests which accrued out of events which transpired when a different prior rule of law was in force. One fundamental consideration of fairness is that settled expectations honestly arrived at with respect to substantial interests ought not to be defeated. [Citation.] The determination of whether the application of the statute unreasonably infringes upon the rights of those to whom it applies involves a balancing and discrimination between reasons for and against the application of the statute to this class of individuals. [Citation.]” 
Moore v. Jackson Park Hospital
, 95 Ill. 2d 223, 241-42 (1983) (Ryan, C.J., specially concurring, joined by Underwood and Moran, JJ.).

See also 2 N. Singer, Sutherland on Statutory Construction §41.05, at 369 (5th ed. 1993) (“Analysis of the practical considerations influencing the question whether a retroactive application of a new law is fair and just should afford more meaningful standards of judgment than either catchpenny phrases or the ambivalent concept of ‘vested’ ”).

This court’s holding in 
Henrich
 that the school district’s tort immunity defense had “vested,” and thus was protected from legislative interference, is simply a specific example of the general maxim that “settled expectations honestly arrived at with respect to substantial interests ought not to be defeated.” 
Moore
, 95 Ill. 2d at 241-42 (Ryan, C.J., specially concurring, joined by Underwood and Moran, JJ.). The facts that supported the conclusion that the school district’s defense was a “settled expectation” that could not be disturbed are readily distinguishable from the facts in the case at bar. In 
Henrich
, the school district’s defense accrued on February 2, 1995, the date the plaintiff’s cause of action arose. The amendment to section 3–108(a) became effective on December 2, 1998. Applying the amendment to section 3–108(a) to plaintiff’s claim would therefore have meant imposing a period of retroactivity on the school district of almost four years. In contrast, the period of retroactivity at issue in this case is only six weeks.

Further, in 
Henrich
, this court concluded that the preamended version of section 3–108(a) completely and unconditionally immunized the school district from plaintiff’s claim alleging willful and wanton misconduct. 
Henrich
, 186 Ill. 2d at 395. Thus, applying the amendment to section 3–108(a) on appeal would have meant resurrecting a claim that had previously been barred in its entirety. See 
Henrich
, 186 Ill. 2d at 405, citing 
Sepmeyer v. Holman
, 162 Ill. 2d 249 (1994). Here, in contrast, even assuming that Edison had a defense to the tax rate on November 17, 1994, that defense did not completely bar Will County’s “claim” to Edison’s property taxes. Edison knew that, under either the old or new versions of sections 5–1024 and 9–107, it would be obligated to pay 1994 county property taxes. The only question was how much its tax bill would be. Edison’s position would be more like the high school’s in 
Henrich
, and more an upsetting of “settled expectations,” if an entirely new tax, rather than a new tax rate, were being imposed by the amendments to sections 5–1024 and 9–107. This important distinction between a new, retroactive tax rate and a new, retroactive tax has been frequently noted:

“ ‘Nobody has a vested right in the rate of taxation, which may be retroactively changed at the will of Congress at least for periods of less than twelve months; Congress has done so from the outset. . . . The injustice is no greater than if a man chance to make a profitable sale in the months before the general rates are retroactively changed. Such a one may indeed complain that, could he have foreseen the increase, he would have kept the transaction unliquidated, but it will not avail him; he must be prepared for such possibilities, the system being already in operation. 
His is a different case from that of one who, when he takes action, has no reason to suppose that any transactions of the sort will be taxed at all
.’ ” (Emphasis added.) 
United States v. Darusmont
, 449 U.S. 292, 298, 66 L. Ed. 2d 513, 518-19, 101 S. Ct. 549, 552-53 (1981), quoting 
Cohan v. Commissioner
, 39 F.2d 540, 545 (2d Cir. 1930) (Hand, J.).

Unlike the high school’s situation in 
Henrich
, the “subtle judgments concerning the fairness or unfairness of applying the new statutory rule” (
Moore
, 95 Ill. 2d at 241-42 (Ryan, C.J., specially concurring, joined by Underwood and Moran, JJ.)) do not, in this case, weigh in Edison’s favor. Accordingly, we hold that Edison’s right to due process under the Illinois Constitution is not violated by the application of the amendments to sections 5–1024 and 9–107 to Will County’s November 1994 levies.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

Affirmed
.