# Illinois Official Reports

## Appellate Court

---

### *People v. Young*, 2019 IL App (3d) 160528

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ZAKEYA E. YOUNG, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0528 |
| Filed | January 3, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Henry County, No. 16-CF-97; the Hon. Terence M. Patton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Matthew Schutte, State's Attorney, of Cambridge (Patrick Delfino, David J. Robinson, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Holdridge and Lytton concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Zakeya E. Young, appeals after pleading guilty to misdemeanor battery. She argues, on multiple grounds, that the circuit court erred in denying her motion to withdraw her guilty plea. She also argues that remand is necessary for compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016). Finally, she makes a number of arguments regarding her monetary assessments. We affirm.

¶ 2                                                      FACTS

¶ 3    The State charged defendant by information on March 7, 2016, with aggravated battery (720 ILCS 5/12-3.05(c) (West 2016)). On August 12, 2016, defendant entered into an agreement under which she would plead guilty to battery (*id.* § 12-3) in exchange for a sentence of 24 months' probation and 60 days in jail.

¶ 4    For the factual basis of the plea, the court relied upon the testimony from defendant's preliminary hearing. At that hearing, Kewanee police officer Nicholas Welgat testified that he and another officer responded to a call of four individuals fighting at the End Zone bar on March 5, 2016. Upon arrival, the bartender told the officers that the parties had gone into the parking lot. There the officers encountered defendant, who was yelling at two other individuals. Welgat learned from the bartender that defendant had entered through the back door of the bar while carrying jumper cables and attacked the victim, Hillary Kyse, as she sat at the bar. The officers learned that another individual had removed the jumper cables from the bar prior to their arrival, and they were able to locate those jumper cables in that individual's vehicle. Further, the officers reviewed surveillance footage, which showed defendant entering the bar carrying jumper cables. Kyse's statement to police corroborated the bartender's account.

¶ 5    After admonishing defendant of her trial rights and of the possible penalties for a Class A misdemeanor, the circuit court accepted her plea and imposed a sentence in accordance with the agreement. The court also ordered defendant to pay a $500 fine, a $75 Violent Crime Victims Assistance Fund fine, and court costs, including a $25-per-month probation fee. The court noted that $5 for each of the 25 days defendant had spent in custody to that point, as well as the $1000 bond defendant had posted, would be applied to the monetary assessments.

¶ 6    On August 24, 2016, defendant filed a motion to withdraw her guilty plea. The motion alleged only that the plea "was unknowingly and involuntarily made where [defendant] did not understand the plea." On August 31, 2016, defense counsel filed a Rule 604(d) certificate in which he averred, *inter alia*, that he had consulted with defendant "to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence."

¶ 7    The circuit court held a hearing on defendant's motion on September 2, 2016. Defendant was not present when the hearing commenced, and defense counsel indicated that he did not know where she was. Counsel told the court that he had spoken with defendant at an earlier date, at which point she insisted that she wished to withdraw her plea. Regarding the motion, counsel admitted that "[i]t's kind of a boilerplate motion in that it doesn't really state *** too much as far as detail goes." The court asked counsel if he wished to move forward with the motion, to which counsel replied: "I couldn't really even present a—I couldn't really proffer what her reasons would be. I don't—I don't think that that's really appropriate to do that."

¶ 8    The circuit court noted that counsel had done "everything he possibly could" for defendant, but that she had not had any follow-up contact with him. The court denied the motion, commenting: "I don't know if she has changed her mind about this or what." Moments later, however, counsel received a phone call from defendant, who was 10 to 15 minutes away from the courthouse. The court vacated its ruling and, when defendant arrived, held a hearing.

¶ 9    When the hearing commenced, defendant testified as to why she wished to withdraw her guilty plea:

> "[W]hen I went back to jail, I had the whole weekend to think about the—the probation, I had to pay for probation, and if I have the misdemeanor battery on my background, I'm not going to be able to keep my license, which I'm a CNA [(certified nursing assistant)] and won't be able to get no job or whatever, and I pled guilty to something really that I didn't do. So, I mean, I just had the whole weekend to think about it, and I just wanted just to take my plea back, basically, and if I'm pleading guilty to something that I didn't do and to have that on my background, then, I mean, the probation is too much, and I do have four kids, and, I mean, I'm a CNA. Like, that's what I went to school for. I worked too hard for that to have this on my background."

The court found that defendant had been properly admonished and entered into the plea knowingly and voluntarily. In denying the motion, the court commented: "[U]nfortunately you can't withdraw your plea just because you've changed your mind." Defendant filed a notice of appeal the same day.

¶ 10                                          ANALYSIS

¶ 11    Defendant's primary contention on appeal is that the circuit court failed to properly admonish defendant regarding the consequences of pleading guilty and therefore erred in denying defendant's motion to withdraw her plea. This argument is based on a statute amended during the pendency of defendant's appeal that added admonishments to those required for a guilty plea. Alternatively, defendant argues that the court erred in denying her motion to withdraw her plea, regardless of the admonishments, since she sufficiently demonstrated a misapprehension of the facts or the law. Defendant also argues that the matter should be remanded for new postplea proceedings because while defense counsel's Rule 604(d) certificate was technically compliant with that rule, the record rebuts the certificate in substance. Finally, defendant raises a number of issues with her monetary assessments.

¶ 12                          I. Retroactivity of Admonishment Law

¶ 13    Defendant pled guilty on August 12, 2016. At that time, section 113-4(c) of the Code of Criminal Procedure of 1963 (Code) mandated that "[i]f the defendant pleads guilty such plea shall not be accepted until the court shall have fully explained to the defendant the consequences of such plea and the maximum penalty provided by law for the offense which may be imposed by the court." 725 ILCS 5/113-4(c) (West 2014). Defendant concedes that the court's admonishments conformed to this requirement.

¶ 14    Effective January 1, 2017, however, the legislature amended section 113-4(c) of the Code. Pub. Act 99-871 (eff. Jan. 1, 2017) (amending 725 ILCS 5/113-4). The new version of the statute requires that the court, before accepting a guilty plea, admonish defendant that

"as a consequence of a conviction or a plea of guilty, there may be an impact upon the defendant's ability to, among others:

(A) retain or obtain housing in the public or private market;

(B) retain or obtain employment; and

(C) retain or obtain a firearm, an occupational license, or a driver's license." 725 ILCS 5/113-4(c)(4)(A)-(C) (West 2016).

The amended statute became effective four months after defendant filed her notice of appeal, while this appeal was pending. Defendant argues that the statutory amendment is procedural, and that we must therefore remand the matter for retroactive application of the new requirements.

¶ 15    In *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 36-39 (2001), our supreme court adopted the retroactivity analysis originally set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). Under the two-part *Landgraf* test, a court embarking upon a retroactivity analysis must first ask whether the legislature has explicitly indicated the temporal reach of the amended statute, in which case that expression of legislative intent controls. *Commonwealth Edison*, 196 Ill. 2d at 38. If the legislature has indicated no particular intent, the court must conduct a retroactive impact analysis, in which it considers whether retroactive application of the amended statute " 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' " *Id.* at 37 (quoting *Landgraf*, 511 U.S. at 280).

¶ 16    Two years after our supreme court decided *Commonwealth Edison*, it clarified that section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2016)) actually renders the second step of the *Landgraf* test unnecessary in this state. *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003). Section 4 of the Statute on Statutes reads as follows:

"No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." 5 ILCS 70/4 (West 2016).

"Section 4 is a general savings clause, which this court has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 20. In other words, if the statutory amendment does not indicate the legislature's intent regarding the temporal reach, the Statute on Statutes controls, since it is itself an indicator of the legislative intent. Accordingly, unless the legislature has indicated the temporal reach of a statutory amendment

within that amendment, retroactivity analysis in Illinois courts generally turn on whether an amendment is considered substantive or procedural in nature. *E.g.*, *People v. Atkins*, 217 Ill. 2d 66 (2005).

¶ 17　　Initially, we note that the statutory amendment to section 113-4 of the Code contained no indication from the legislature whether it should apply retroactively or prospectively. Moreover, we find that the amendment in question is procedural in nature. See *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 310-11 (1988) ("[P]rocedure embraces 'pleading, evidence and practice. Practice means those legal rules which direct the course of proceedings to bring parties into court and the course of the court after they are brought in.' " (quoting *Ogdon v. Gianakos*, 415 Ill. 591, 596 (1953))). This finding, however, is not dispositive. Our supreme court's recent decision in *People v. Hunter*, 2017 IL 121306, compels us to consider whether retroactive application of the statutory amendment is appropriate where the amendment in question became effective only after defendant had filed a notice of appeal. We begin by considering *Hunter* and a similar case, *Howard*, 2016 IL 120729.

¶ 18　　Effective January 1, 2016, the legislature amended section 5-130(1)(a) of the Juvenile Court Act of 1987 (Act). Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a)). The amended statute removed armed robbery and aggravated vehicular hijacking from the list of offenses that qualify for automatic transfer to adult court. *Id.* The amended statute also raised the age for automatic transfer to adult court for enumerated offenses from 15 to 16. *Id.* Luis Montano was 15 years old when the State charged him in adult criminal court with four counts of first degree murder. *Howard*, 2016 IL 120729, ¶¶ 3-4. His case was pending in the circuit court when Public Act 99-258 became effective. On February 8, 2016, Montano successfully moved to have his case transferred to juvenile court based on the retroactive application of the amended statute. *Id.* ¶¶ 5, 7.

¶ 19　　Our supreme court considered the temporal reach of the amended statute pursuant to the State's petition for writ of *mandamus*. *Id.* ¶ 1. After reviewing its retroactivity jurisprudence (see *supra* ¶¶ 15-16), the court found that the amendment did not contain an express indication of intended temporal reach. *Howard*, 2016 IL 120729, ¶¶ 21-27. Turning to section 4 of the Statute on Statutes, the court noted that both parties agreed that the amended statute was procedural in nature. *Id.* ¶ 28. The court concluded: "Because there is no constitutional impediment to retroactive application, the amendment applies to pending cases." *Id.*

¶ 20　　The court considered the same amended statute the following year in *Hunter*, 2017 IL 121306. The defendant in that case, Kevin Hunter, was found guilty in adult court of, *inter alia*, armed robbery while armed with a firearm and aggravated vehicular hijacking. *Id.* ¶¶ 4, 6. Hunter was 16 years old at the time he committed the offenses. *Id.* ¶ 4. Public Act 99-258, which removed Hunter's offenses from the list of those triggering automatic transfer to adult court, went into effect while his direct appeal was pending. *Id.* ¶¶ 7-8. On appeal, the defendant argued that his case should be remanded for a discretionary transfer hearing, since transfer was no longer automatic. The appellate court affirmed, finding that the amended statute did not apply retroactively. *People v. Hunter*, 2016 IL App (1st) 141904, ¶ 73.

¶ 21　　When our supreme court considered the retroactivity argument in *Hunter*, the only difference between that case and *Howard* was the stage at which each defendant's case was pending when the same statutory amendment went into effect. The court agreed with the defendant that the court's "retroactivity jurisprudence has not typically distinguished between

cases that are pending in the trial court and cases pending in the appellate court on direct review at the time a statutory amendment becomes effective." *Hunter*, 2017 IL 121306, ¶ 27. From there, however, the court devoted the remainder of its decision to explaining why the result must be different:

> "Our agreement with Hunter on this point, however, does not lead us to conclude that, pursuant to section 4 of the Statute on Statutes and our decision in *Howard*, remand for further proceedings is mandated in this case. The process of statutory construction requires more than mechanical application of a rule of law or a decision of this court. We have an obligation to construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended. *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 19; *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 39. As we recently observed, 'the process of statutory construction should not be divorced from consideration of real-world results.' *People v. Fort*, 2017 IL 118966, ¶ 35. Here, Hunter's construction of the amended statute would lead to real-world results that the legislature could not have intended." *Id.* ¶ 28.

¶ 22    The *Hunter* court noted that it never elaborated on what the term "pending cases" meant, as used in *Howard*. *Id.* ¶ 29; *Howard*, 2016 IL 120729, ¶ 28; *supra* ¶ 19. Similarly, the court recognized that it had previously held that " 'procedural law changes will apply to *ongoing proceedings*.' " (Emphasis in original.) *Hunter*, 2017 IL 121306, ¶ 30 (quoting *People v. Ziobro*, 242 Ill. 2d 34, 46 (2011)). *Hunter* thus required the court to consider whether a pending direct appeal could be considered a "pending case" or an "ongoing proceeding" for retroactivity purposes.

¶ 23    The *Hunter* court concluded that "Section 4 [of the Statute on Statutes] contemplates the existence of proceedings after the new or amended statute is effective to which the new procedure could apply." *Id.* ¶ 31. Since the defendant's proceedings in the trial court were completed "well before" the General Assembly amended the statute, no ongoing proceedings existed to which that amendment could apply. *Id.* ¶ 32. The court concluded:

> "Simply stated, there are no 'proceedings thereafter' capable of 'conform[ing]' to the amended statute. 5 ILCS 70/4 (West 2016). Nothing remains to be done.
>
> Because Hunter's trial court proceedings have been concluded, and no further trial court proceedings are necessitated by reversible error, applying the amended statute retroactively to Hunter's case would result in this court effectively creating new proceedings for the sole purpose of applying a procedural statute that postdates his trial and sentence. We have grave concerns about such a result." *Id.* ¶¶ 32-33.

Elaborating on those concerns, the court noted that appellate remand to the circuit court for retrial each time the General Assembly enacted a new procedural trial rule would lead to absurd results. "Remand under such circumstances would create inconvenience and a waste of judicial resources—a real-world result that the General Assembly could not have intended." *Id.* ¶ 36.

¶ 24    We find that *Hunter* dictates the outcome in this case. The court properly admonished defendant prior to her guilty plea, pursuant to the statute in effect at that time. Four months later, while defendant's direct appeal was pending, the admonishment requirements changed. At this moment, no proceedings exist at which the amended statute could be applied. As the *Hunter* court stated: "Nothing remains to be done." *Id.* ¶ 32. Moreover, remanding so that

- 6 -

defendant can withdraw her plea and go to trial, simply because the circuit court did not deliver admonishments that it was not obligated to give in the first place, would create precisely the "inconvenience and *** waste of judicial resources" that concerned the *Hunter* court. *Id.* ¶ 36.

¶ 25 In arguing that *Hunter* is distinguishable from her own case, defendant insists that remand here would not be impracticable. The *Hunter* court, indeed, did find that remand in that case would be impracticable or not feasible, as the defendant had by that time reached the age of 22, and could not have been subjected to the jurisdiction of the juvenile court. *Id.* ¶ 38. However, the court plainly presented this point as a separate, distinct reason for its finding of nonretroactivity, rather than as indispensable to its conclusion. *Id.* ¶ 37 ("We reject Hunter's argument for retroactive application *for the further reason* that new procedural rules only apply to ongoing proceedings 'so far as practicable.' " (Emphasis added.) (quoting 5 ILCS 70/4 (West 2016))). In short, *Hunter* does not mandate a feasibility analysis.

¶ 26 While we reject defendant's retroactivity argument pursuant to *Hunter*, we are mindful that the *Hunter* court did not completely foreclose the potential of appellate remand for retroactive application of an amended statute. In *Ziobro*, 242 Ill. 2d at 45-46, the court instructed that a new procedural statute that went into effect during the pendency of the defendants' appeals would apply on remand after the court reversed the circuit court's dismissal of charges. While the *Hunter* court held that it would be inappropriate to remand *solely* for the retroactive application of an amended statute, it reaffirmed the principle from *Ziobro* that where a remand is required by some reversible error, the procedural statutory amendment should apply on that remand. *Hunter*, 2017 IL 121306, ¶ 32.

¶ 27 Thus, in the present case, if we were to find that some other error in the proceedings necessitates a remand, the amended admonishment statute would apply when the matter returns to the circuit court. However, we find no independent grounds for remand in this case. See *infra* ¶¶ 28-43. Accordingly, we find that Public Act 99-871 does not apply retroactively to defendant's case.

¶ 28                                   II. Knowing and Voluntary Plea

¶ 29 Defendant next argues that the circuit court erred in denying her motion to withdraw her guilty plea where her testimony established that the plea was unknowing and involuntary. Specifically, defendant asserts that her misapprehension of a collateral consequence—namely, the loss of her CNA "license" and inability to get a job—was a proper ground for the withdrawal of a guilty plea.

¶ 30 Initially, defendant argues that the circuit court's ruling that defendant could not withdraw her plea "just because [she] changed her mind" "demonstrates the court did not realize it had discretion to grant the motion based on a collateral consequence." This argument is speculative and wholly unsupported by the record. Alternatively, defendant contends that if the court did exercise its discretion, it abused that discretion in denying the motion to withdraw her guilty plea. We disagree.

¶ 31 A defendant has no absolute right to withdraw his or her guilty plea. *People v. Baez*, 241 Ill. 2d 44, 110 (2011). "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *People v. Hughes*, 2012 IL 112817, ¶ 32. Where a defendant seeks to withdraw a guilty plea based on a claimed misapprehension of the

facts or of the law, "the misapprehension must be shown by the defendant." *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009).

¶ 32 In the present case, defendant argues that she

"entered into a guilty plea under a misapprehension of the consequences of the plea agreements would have on her ability to retain her occupational license and job. Further, [defendant] did not understand the financial hardship that the probation fees would create because she supported her four children."

¶ 33 Defendant's description on appeal of her misapprehensions is a mischaracterization of her testimony at the hearing on the motion to withdraw her plea. At that hearing, defendant testified twice that she "had the whole weekend to think about" the consequences of her plea. She did not testify that she did not previously understand those consequences. She did not testify that she came upon any new information. She did not testify that she had pled guilty under any sort of mistaken beliefs. Defendant had only taken the weekend to think more about the consequences of the plea. Where it is defendant's burden to demonstrate a misapprehension, defendant's testimony here can only be construed as a simple change of mind, just as the circuit court construed it. That defendant changed her mind after further reflection, of course, is not a proper ground for the withdrawal of a guilty plea.

¶ 34 Defendant also argues, briefly, that she was entitled to withdraw her plea because there was "doubt as to the guilt of the accused and justice would be better served through a trial." *Hughes*, 2012 IL 112817, ¶ 32. The evidence of defendant's guilt, including surveillance video of her carrying jumper cables into the bar, is overwhelming. See *supra* ¶ 4. In light of that evidence, defendant's general statement that she did not commit the offense does nothing to cast any doubt on her guilt. Indeed, to find that a bare postplea denial of guilt entitles a defendant to withdrawal of that plea would be to effectively bestow on defendants an absolute right to withdraw any plea. Such a result could not be tolerated. See *Baez*, 241 Ill. 2d at 110.

¶ 35 III. Rule 604(d)

¶ 36 Defendant next argues that plea counsel's failure to comply with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016) requires remand for new postplea proceedings. While defendant concedes that counsel's certificate was fully compliant with that rule, she maintains that the report of proceedings substantively rebuts that certificate. Specifically, she asserts that counsel's purported inability to articulate her reasons for withdrawing her plea demonstrates his failure to satisfy the rule's consultation requirement.

¶ 37 Rule 604(d) requires that counsel representing a defendant attempting to withdraw his or her plea take certain steps in accordance with that motion. The rule states:

"The defendant's attorney shall file with the trial court a certificate stating that the attorney has *consulted with the defendant* either by phone, mail, electronic means or in person *to ascertain defendant's contentions of error* in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." (Emphases added.) Ill. S. Ct. R. 604(d) (eff. Mar. 8, 2016).

¶ 38 At the hearing on defendant's motion to withdraw her plea, counsel indicated that he had met with defendant at an earlier date and that she had indicated her desire to withdraw her plea.

When asked if he would like to proceed on the motion in defendant's absence, counsel responded: "I couldn't really proffer what her reasons would be. I don't—I don't think that that's really appropriate to do that." Based on this response, defendant now asserts that counsel failed to ascertain her contentions of error, as required by Rule 604(d).

¶ 39 Defendant's interpretation of counsel's comment is self-serving. Defendant presumes that when counsel stated that he could not proffer defendant's reasons for wanting to withdraw her plea, he meant that he did not have the ability to do so because he did not ask her what they were. Defendant ignores the second portion of counsel's comment, where he stated that doing so would be inappropriate. Indeed, it *would* be inappropriate to proceed on a client's motion to withdraw a plea when the client is inexplicably absent from court. As the circuit court pointed out, it was very possible that defendant had changed her mind about withdrawing the plea. A Rule 604(d) certificate is designed to provide proof of counsel's compliance with that rule. *People v. Love*, 385 Ill. App. 3d 736, 738 (2008). We find that counsel's comment does not affirmatively rebut that proof.

¶ 40                                IV. Fines

¶ 41 Finally, defendant raises the following issues relating to her fines: (1) the payment status information page indicates that the circuit clerk imposed $600 in fines, rather than the $575 imposed by the court at sentencing, (2) that same page fails to reflect the $125 in presentence custody credit defendant was entitled, (3) the circuit clerk imposed a judicial security fee in excess of the statutory maximum, and (4) the $500 fine imposed by the court was improperly broken down by the circuit clerk into constituent fines.

¶ 42 Each of the actions challenged by defendant were taken by the circuit clerk and are not reflected in any order of the circuit court. Under *People v. Vara*, 2018 IL 121823, ¶ 23, this court does not have jurisdiction to review actions of the circuit clerk. In her brief, defendant acknowledges that *Vara* controls the outcome here "if unmodified." Nevertheless, she argues that *Vara* was incorrectly decided and that this court, in any event, should wait until the mandate issues in that case before rendering our ruling here.

¶ 43 The supreme court issued the mandate in *Vara*. Accordingly, we lack jurisdiction to consider defendant's monetary arguments.

¶ 44                                CONCLUSION

¶ 45 For the foregoing reasons, we affirm the judgment of the circuit court of Henry County.

¶ 46 Affirmed.