# Illinois Official Reports

## Appellate Court

---

### *People v. Williams*, 2019 IL App (3d) 160412

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONTARRIES L. WILLIAMS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0412 |
| Filed | June 25, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 15-CF-119; the Hon. John P. Vespa, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Matthew Lemke, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, David J. Robinson, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion. Presiding Justice Schmidt and Justice Carter concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant Dontarries L. Williams pled guilty to criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2014)) and was sentenced to eight years in prison with a mandatory supervised release (MSR) term of three years to natural life. As a result of his conviction, he was required to register as a sex offender under the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2016)). Within 30 days of sentencing, defendant filed a motion to withdraw his plea, which the circuit court denied. On appeal, he argues he should be allowed to withdraw his plea because (1) the trial court improperly considered the merits of his proposed defense in assessing his motion, (2) he did not understand the requirements and consequences of SORA when he entered into the plea, (3) counsel was ineffective in failing to advise him about the requirements of SORA, and (4) the trial court failed to adequately admonish him before accepting his plea. We affirm.

¶ 2     Defendant was charged by indictment with criminal sexual assault for knowingly committing an act of sexual penetration on Latoya Coffee by use of force or the threat of force on or about February 8, 2015. On the date of trial, the court informed defendant that, if he was convicted, he would be sentenced to a term of 4 to 15 years in prison. The court also informed defendant that at the end of his prison term he would "be placed on a period of mandatory supervised release [(MSR)], or what we used to call parole, for a period of at least two years, but it could be up to natural life. But that will be determined by authorities of the Department of Corrections and other relevant authorities before your release." The prosecutor reminded the court that the minimum term of MSR was 3 years. The court then corrected its earlier statement and informed defendant that MSR would be "[t]hree years to natural life."

¶ 3     Following jury selection, public defender William Loeffel informed the court that the parties had negotiated a plea agreement. Loeffel stated that defendant agreed to plead guilty to criminal sexual assault, with a recommended sentence of eight years and "three years to life mandatory supervised release at the discretion of the Department of Corrections." The court then admonished defendant as follows:

>     "If you did not have a plea agreement, in other words if you went to trial and lost and let the judge decide, you would face the following sentencing range: This is a nonprobational offense so it would have to be a minimum prison sentence of 4 years. It would not exceed 15 years. You would be serving 85 percent and parole, or, mandatory supervised release, at the end, would be three years to life. It would not determine how much until the end of your sentence. You understand that's what you could have faced."

Defendant acknowledged the court's statement and said that he understood. The trial court did not admonish defendant that he was required to register as a sexual offender under SORA.

¶ 4     The prosecutor provided the factual basis for the plea, which showed that Coffee provided a statement indicating that defendant sexually assaulted her by force on February 8, 2015. Within hours of the attack, Coffee went to the hospital, where a rape kit was collected. She also identified defendant as her attacker. A buccal swab collected from the defendant matched the DNA analysis of the sperm collected during Coffee's examination.

¶ 5     The court accepted the plea agreement and sentenced defendant to eight years in prison. The written sentencing order noted that defendant was subject to "3 years to life Mandatory

Supervised Release (parole)," and a box next to "[s]ex offender registration pursuant to statute" was also checked.

¶ 6        Within 30 days, defendant filed a *pro se* motion to withdraw his plea and vacate judgment. Defendant alleged that Loeffel provided ineffective assistance of counsel by (1) failing to discuss or acknowledge defendant's options to prepare for a better defense, (2) rushing defendant to take a plea because Loeffel was not prepared for trial, and (3) failing to present a witness whose testimony would have changed the outcome of the case. Defendant asked for leave to withdraw his plea and for the court to appoint new counsel.

¶ 7        At the hearing on defendant's motion, Loeffel presented a motion stating that defendant had raised claims of ineffective assistance of counsel and asking the court to review them under *People v. Krankel*, 102 Ill. 2d 181 (1984). During the hearing, Loeffel acknowledged that defendant's *pro se* motion alleged that he was ineffective and suggested that another attorney be appointed to review the allegations. In response to the court's questioning, defendant expressed his frustration with the guilty plea process and affirmed that he wished to withdraw his plea. He stated, "I just kind of feel like the negotiation process didn't go—wasn't a two way, and I didn't kind of understand everything, you know, didn't explain everything to me. I feel like that I was just kind of left in the blind about certain things." At the conclusion of defendant's testimony, the court assigned new counsel and ordered a transcript of the plea hearing.

¶ 8        Newly appointed counsel filed a motion to withdraw defendant's plea. The motion alleged that Loeffel was ineffective and that defendant felt compelled to plead guilty due to Loeffel's deficient representation. The motion claimed that Loeffel (1) failed to request a continuance to obtain Facebook evidence of a conversation defendant had with Coffee hours after the alleged attack and (2) failed to contact defendant's caseworker, Ron Valle, who had access to defendant's Facebook account. Defendant claimed the conversation would have demonstrated that he had consensual intercourse with Coffee. The motion also claimed that defendant's plea was not knowing and voluntary because Loeffel did not explain the terms of MSR to defendant.

¶ 9        At the hearing on the motion, counsel stated that he tried to obtain the Facebook information to present to the court as proof of a meritorious defense but was unable to do so because the account had been erased. He acknowledged that defendant had been properly admonished regarding MSR but argued that defendant did not understand that the department could keep him in prison for life if he was unable to obtain approved housing.

¶ 10       Defendant testified that he would not have pled guilty but for Loeffel's ineffective representation. He stated that he asked Loeffel to obtain the messages from his Facebook account before trial but Loeffel failed to do so. When Loeffel was unable to get the Facebook messages, defendant asked him to request a continuance, and Loeffel refused. Defendant also noted that he did not understand the effect the sex offender registration would have on his MSR term when he accepted the plea:

"[Loeffel] explained to me that everybody that would be charged would get this and that after I come out that I could be on parole for life. That's all he said, was that everybody gets it and after I get out I could have life on parole, that once a sex offender, always a sex offender."

¶ 11       Defendant admitted that the court admonished him that the MSR term was three years to life. But he testified that he did not understand that he could remain in prison indefinitely if he

was unable to find suitable housing as a registered sex offender. He stated that, had he known about the practical effects of the MSR term, he would have gone to trial.

¶ 12    On cross-examination, defendant recalled being shown a picture of Coffee. He told the officers that he did not remember her and that he was in a relationship with another woman. When asked if he had sex with her, he said that he did not know the victim and that he did not have sex with her. Defendant admitted that he was now, at the motion to withdraw hearing, admitting that he had sex with Coffee. He testified that his statement to police that he did not know the victim or have sex with her was a misunderstanding. He also admitted that he did not remember the Facebook messages when he spoke with officers two weeks after the incident.

¶ 13    On redirect, defendant stated that he would not have pled guilty had Loeffel obtained the Facebook communications and if he had understood that he potentially could remain in prison indefinitely under his MSR term.

¶ 14    The trial court then questioned defendant. The court asked defendant how he met the victim, and he said that she reached out to him through a Facebook request on his cell phone. Defendant then informed the court that he did not have his cell phone with him when he spoke with police a few weeks after the incident and that he no longer had possession of it. Defendant said he met with his social worker, Ron Valle, and he told him about the Facebook messages. Valle followed up and told defendant that he had seen the messages. Defendant could not explain why he did not retrieve the message from his cell phone on his own.

¶ 15    The trial court noted that defendant's demeanor during his testimony "belie[d] him" and that "his answers did not make sense." The court reviewed the allegations in the motion and defendant's testimony and denied the motion to withdraw the plea.

¶ 16                                    ANALYSIS
¶ 17                        I. Evaluating Defendant's Proffered Defense
¶ 18    Defendant argues that the trial court applied the incorrect legal standard to its consideration of his meritorious defense in his motion to withdraw his guilty plea and vacate judgment. He contends that, although the trial court had discretion to allow him to withdraw his plea, it abused that discretion by going beyond the legal sufficiency of his proffered defense and improperly considering the merits of his case.

¶ 19    A defendant does not enjoy an absolute right to withdraw his or her guilty plea. *People v. Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22. To the contrary, the defendant bears the burden of demonstrating to the trial court the necessity of withdrawing it. *People v. Dougherty*, 394 Ill. App. 3d 134, 140 (2009). Leave to withdraw a guilty plea is granted as required to correct a manifest injustice under the facts of the case. *Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22. A defendant is allowed to withdraw a plea only if it appears that (1) the defendant pled guilty due to a misapprehension of the facts or the law, (2) there is doubt as to the defendant's guilt, (3) the defendant has a meritorious defense, or (4) the ends of justice will be best served by submitting the case to a jury. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). If a motion to withdraw is properly filed, the trial court should consider the motion on the merits. See *People v. Thigpen*, 211 Ill. 2d 609 (2004) (supervisory order); *People v. Crete*, 133 Ill. App. 3d 24, 32 (1985). We will reverse the trial court's denial of a motion to withdraw a guilty plea only if we conclude that the court abused its discretion. *Dougherty*, 394 Ill. App. 3d at 140.

¶ 20 Here, in his motion to withdraw his plea, defendant alleged that he had a meritorious defense. He claimed that certain Facebook messages from Coffee were exculpatory evidence pertaining to a consent defense, and he testified at the motion to withdraw hearing in support of that claim. The trial court considered that defendant claimed the messages were on his cell phone, that he claimed he did not have his phone with him during the police interview, and that he could have obtained the messages himself but failed to recover them. Defendant also admitted that he waited until only weeks before trial to ask Loeffel to retrieve the messages from Facebook and Loeffel was unable to do so. The court then concluded that defendant failed to present sufficient evidence to demonstrate the necessity of allowing him to withdraw his plea. The trial court found that defendant's testimony was not sufficient evidence of a meritorious defense to demonstrate a necessity for allowing him to withdraw his guilty plea. We cannot say that the court abused its discretion or applied an incorrect legal standard in reaching that conclusion by considering the merits of defendant's proposed defense. See *People v. Feldman*, 409 Ill. App. 3d 1124, 1128-29 (2011) (determination of whether evidence of meritorious defense demonstrates necessity for allowing defendant to withdraw guilty plea requires assessment of evidence in support of proposed defense).

¶ 21 Defendant cites *Gearhart v. United States*, 272 F.2d 499 (D.C. Cir. 1959), which warned against weighing the merits of a proffered defense when considering a motion to withdraw. *Id.* at 502. However, the rule espoused in *Gearhart* has been rejected by subsequent cases. See *Bennett v. United States*, 726 A.2d 156, 168 (D.C. 1999); *White v. United States*, 863 A.2d 839, 842 (D.C. 2004) (trial court is entrusted with an initial assessment of defendant's assertion of innocence).

¶ 22 Moreover, Illinois courts have not adopted *Gearhart*'s rationale. In *People v. Brown*, 2017 IL 121681, our supreme court reviewed a case involving erroneous advice by counsel prior to a guilty plea regarding the percentage of the sentence defendant would serve. *Id.* ¶¶ 46-47. The court stated, "when reviewing an ineffective assistance claim related to a defendant's defense strategy or chance of acquittal, *i.e.*, a defendant's prospects at trial, the court requires a claim of innocence or a plausible defense to establish prejudice." *Id.* ¶ 45.

¶ 23 As stated by our supreme court in *Davis* and subsequent appellate court decisions, the trial court's task is to determine whether defendant had a "meritorious defense." See *Davis*, 145 Ill. 2d at 244; *Dougherty*, 394 Ill. App. 3d at 140; *Feldman*, 409 Ill. App. 3d at 1128-29. In this case, the trial court did not apply the wrong legal standard by considering the merits of defendant's proffered defense in denying his motion to withdraw the plea.

¶ 24 II. Whether Defendant's Plea Was Knowingly and Intelligently Made

¶ 25 Next, defendant asserts that the trial court abused its discretion in denying his motion to withdraw his guilty plea where the record demonstrates that his plea was not knowingly and intelligently made. He claims that his plea was not made voluntarily because the trial court failed to adequately admonish him regarding the mandatory registration requirements under SORA and the effect those requirements could have on his term of MSR.[1]

---

[1]Defendant also claims that the trial court failed to properly admonish him under the Sexually Violent Persons Commitment Act (SVP Act) (725 ILCS 207/20 *et seq.* (West 2016)). We decline to address that claim, however, because the record indicates that defendant was not convicted under the SVP Act.

¶ 26    A trial court's decision to deny a defendant's motion to vacate his guilty plea is reviewed for abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). In that context, the failure to properly admonish a defendant, standing alone, does not automatically establish grounds for reversing the judgment or vacating the plea. When a defendant alleges that inadequate admonishments have been given, due process concerns arise, and we must determine whether the plea was made voluntarily and intelligently. *People v. Guzman*, 2015 IL 118749, ¶ 16. With respect to voluntariness, the important knowledge the trial court must impart to the defendant prior to accepting a plea includes only the direct consequences of the guilty plea. *Delvillar*, 235 Ill. 2d at 520.

¶ 27    Direct consequences of a guilty plea are limited to penal consequences, and our supreme court has held that SORA and related laws are not punitive. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 207 (2009). As such, registration as a sex offender is a collateral consequence of a defendant's conviction and does not give a defendant standing to challenge his conviction. See *People v. Adams*, 144 Ill. 2d 381, 387-89 (1991); *People v. Cowart*, 2015 IL App (1st) 131073, ¶ 20; *People v. Steward*, 406 Ill. App. 3d 82, 90 (2010). Whether a defendant could be subject to incarceration during any portion of his or her MSR term is also a collateral consequence of a defendant's guilty plea, and the trial court is not required to inform a defendant of that consequence prior to accepting the plea. See *People v. Boykins*, 2017 IL 121365, ¶¶ 19-20; *People v. Isringhaus*, 38 Ill. App. 3d 535, 537 (1976). The trial court is only required to inform a defendant of the MSR term itself because it is part of the sentence imposed by the court; in other words, it is a direct consequence of the defendant's plea. *Isringhaus*, 38 Ill. App. 3d at 536-37.

¶ 28    In this case, defendant's argument that the admonishments were inadequate fails to demonstrate that his guilty plea was not knowingly and intelligently made. First, the absence of SORA admonishments does not invalidate defendant's guilty plea. Sex offender registration is a collateral consequence of defendant's conviction. See *Adams*, 144 Ill. 2d at 387-89; *Cowart*, 2015 IL App (1st) 131073, ¶ 20. Thus, the trial court's failure to admonish defendant regarding SORA registration and restrictions does not render defendant's guilty plea unknowing or involuntary.

¶ 29    Turning to the MSR admonishments, defendant was advised by the court that MSR would apply and that the term would range from three years to natural life in prison. See 730 ILCS 5/5-8-1(d)(4) (West 2014). Any potential effect SORA registration might have on defendant's MSR term is also a collateral consequence, and the trial court was not required to inform defendant of that consequence prior to accepting his plea. Thus, no due process violation occurred in defendant's admonishments that would render his guilty plea unknowing or involuntary.

¶ 30    Defendant recognizes our supreme court's position that SORA requirements are not punitive. See *Konetski*, 233 Ill. 2d at 207. But he argues that the 2106 SORA-related laws are much more onerous and that the additional restrictions are punitive. We agree that the current SORA-related statutes are punitive. See *People v. Cetwinski*, 2018 IL App (3d) 160174, ¶¶ 50-54 (current statutory scheme of lifetime penalties to which sex offenders are subject constitutes punishment under the eighth amendment and proportionate penalties clause). Defendant, however, entered his guilty plea in 2015. He was not admonished under the current SORA-related laws, and as we have concluded below, the recent amendments to the admonishments under section 113-4(c) do not apply retroactively to his guilty plea proceeding. Therefore, we

cannot say that the trial court abused its discretion in denying defendant's motion to withdraw his guilty plea based on inadequate admonishments.

¶ 31                                      III. Counsel's Effectiveness

¶ 32    Defendant claims that he should be permitted to withdraw his plea because counsel was ineffective in failing to explain the mandatory restrictions of SORA and the consequences of those restrictions on his term of MSR.

¶ 33    To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance resulted in prejudice to the defendant such that, but for counsel's errors, a different result would have been reached. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶ 34    Generally, claims of ineffective assistance of counsel should be reviewed on direct appeal unless "the record is incomplete or inadequate for resolving the claim." *People v. Veach*, 2017 IL 120649, ¶ 46. Defendants are required to raise ineffective assistance claims on direct review if the claims are apparent on the record or risk forfeiture. See *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). However, procedural default does not preclude a defendant from raising an issue on collateral review that depends on facts not found in the record. *Veach*, 2017 IL 120649, ¶ 47. If the record is incomplete or inadequate, ineffective assistance of counsel claims may be better suited to review under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). See *Veach*, 2017 IL 120649, ¶ 46; *People v. Bew*, 228 Ill. 2d 122, 135 (2008) (ineffective assistance claims may be better suited to collateral proceedings when the record is inadequate). Collateral review is appropriate for deciding ineffective assistance claims if the necessary facts are not in the trial record. *Bew*, 228 Ill. 2d at 135 (ineffective assistance claim raised on direct appeal more appropriately raised under the Act).

¶ 35    In *Veach*, our supreme court noted that ineffective assistance claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the issue. *Veach*, 2017 IL 120649, ¶ 46. There, the defendant claimed that his trial counsel provided ineffective assistance by stipulating to the admission of recorded statements of the State's two main witnesses. The record on direct appeal contained defense counsel's reason for stipulating to the admission of the recorded statements. Defense counsel stated on the record that he believed the use of the recordings for impeachment opened the door for the State to admit character evidence and prior inconsistent statements. With that statement, the court concluded that the record was sufficient to resolve defendant's ineffective assistance claim on direct review. *Id.* ¶¶ 50-51.

¶ 36    Here, the record is not adequate for us to resolve defendant's ineffective assistance of counsel claim. The record is silent as to whether Loeffel informed defendant about the SORA requirements and the effects of pleading guilty to sexual assault or how those requirements could impact his term of MSR. To resolve defendant's claim, this court would need to guess as to whether that information was provided to defendant. Unlike *Veach*, the ineffective assistance of counsel claim defendant raises cannot be addressed on the record because defense counsel did not testify as to his conversations with defendant prior to defendant's decision to accept the plea. Loeffel did not testify at the hearing before new counsel was appointed, nor did he testify at the motion to withdraw hearing.

- 7 -

¶ 37    Under these circumstances, we find that defendant's ineffective assistance claim is better suited to a collateral proceeding. Further, we see no risk of forfeiture on collateral review. Although issues that could have been raised and considered on direct review are deemed procedurally defaulted, procedural default does not preclude a defendant from raising an issue on collateral review that depends on facts not found in the record. See *id.* ¶ 47; *People v. Thomas*, 38 Ill. 2d 321, 323-24 (1967). This case falls within that category.

¶ 38                                    IV. Admonishments

¶ 39    Last, defendant asks this court to find that the recent amendment to section 113-4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-4 (West 2016)) should be applied retroactively to his guilty plea proceeding.

¶ 40    Effective January 1, 2017, the General Assembly amended section 113-4(c) of the Code. Pub. Act 99-871 (eff. Jan. 1, 2017) (amending 725 ILCS 5/113-4). The new version of the statute requires the trial court to inform the defendant of certain consequences of pleading guilty before accepting the defendant's guilty plea:

> "(c) If the defendant pleads guilty such plea shall not be accepted until the court shall have fully explained to the defendant the following:
>
> (1) the maximum and minimum penalty provided by law for the offense which may be imposed by the court;
>
> (2) as a consequence of a conviction or a plea of guilty, the sentence for any future conviction may be increased or there may be a higher possibility of the imposition of consecutive sentences;
>
> (3) as a consequence of a conviction or a plea of guilty, there may be registration requirements that restrict where the defendant may work, live, or be present; and
>
> (4) as a consequence of a conviction or a plea of guilty, there may be an impact upon the defendant's ability to, among others:
>
> > (A) retain or obtain housing in the public or private market;
> >
> > (B) retain or obtain employment; and
> >
> > (C) retain or obtain a firearm, an occupational license, or a driver's license."
>
> 725 ILCS 5/113-4(c) (West 2016).

¶ 41    In *People v. Hunter*, 2017 IL 121306, our supreme court reviewed the proper analysis courts must employ when determining the temporal reach of a statute and noted the adoption of the analysis in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Hunter*, 2017 IL 121306, ¶¶ 19-22. Under *Landgraf*, courts must first ask whether the legislature has clearly indicated the statute's temporal reach; if so, the legislature's intent will be given effect. See *id.* ¶ 20. If the legislature's intent is not clear, the court must then determine whether the statute has a retroactive impact, *i.e.*, whether the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." (Internal quotation marks omitted.) *Id.* If there is no retroactive impact, the amendment may be applied retroactively, but if there is a retroactive impact, the court presumes that the legislature intended the amendment to apply prospectively. *Id.*

¶ 42    *Hunter*, however, acknowledged that section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2016)) actually renders the second prong of the *Landgraf* analysis unnecessary. *Hunter*, 2017 IL 121306, ¶ 21. Section 4 provides:

"No new law shall be construed to repeal a former law, *** or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 2016).

Section 4 of the Statute on Statutes is a general savings clause, which has been interpreted as meaning that, unless the legislature has expressly indicated the temporal reach of an amendment, procedural changes to statutes will be applied retroactively, while substantive changes will only apply prospectively. *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 20. Thus, under the Statute on Statutes, substantive amendments may not be applied retroactively, but procedural changes will apply retroactively to " 'ongoing proceedings.' " *Id.* ¶ 28 (quoting *People v. Ziobro*, 242 Ill. 2d 34, 46 (2011)).

¶ 43    Here, the statutory amendment to section 113-4(c) does not contain a specific date designating its temporal reach. Our analysis is then governed by section 4 of the Statute on Statutes, and we must determine whether the amendment is substantive or procedural. As this court recently found in *People v. Young*, 2019 IL App (3d) 160528, the amendment to the admonishment statute is procedural in nature. See *id.* ¶ 17 (noting that the changes to section 113-4(c) merely describe new practices, which direct the course of proceedings in the court (citing *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 310-11 (1988))).

¶ 44    Since the changes are procedural, they may be applied retroactively to ongoing proceedings. The question is whether defendant's appeal qualifies as an "ongoing proceeding." See 5 ILCS 70/4 (West 2016). *Hunter* speaks to this issue as well. The defendant in that case contested amendments to the Juvenile Court Act of 1987 that changed the transfer requirements of juveniles to adult court. The transfer proceedings were completed in 2011, but while the defendant's case was on appeal, the statute was amended in 2016. Defendant argued on appeal that the procedural amendment should apply retroactively. The supreme court concluded that

"[b]ecause Hunter's trial court proceedings have been concluded, and no further trial court proceedings are necessitated by reversible error, applying the amended statute retroactively to Hunter's case would result in this court effectively creating new proceedings for the sole purpose of applying a procedural statute that postdates his trial and sentence. We have grave concerns about such a result." *Hunter*, 2017 IL 121306, ¶ 33.

The court refused to apply the procedural amendment retroactively, noting that procedural amendments should apply retroactively only "so far as practicable," and it was not practicable in that case. (Internal quotation marks omitted.) *Id.* ¶ 37.

¶ 45    In this case, the retroactive application of the statute also lacks practicality. The proceedings in the trial court were completed well before the statute was amended, and there are no pending trial court motions or hearings to which the amended statute could apply. Defendant pled guilty, was sentenced, and began serving his term of incarceration in 2015, and his motion to withdraw was denied on July 12, 2016. One week later, he filed his notice of appeal. At that time, the proceedings in the trial court were over. Six months later, the

legislature enacted Public Act 99-817 and amended section 113-4(c). If we accept defendant's argument, we would remand this case to the trial court because it did not give admonishments that were not included in the admonishment statute at the time the court accepted defendant's guilty plea. Following the rationale in *Hunter*, we conclude that such a result is concerning and impractical.

¶ 46                                    CONCLUSION
¶ 47          The judgment of the circuit court of Peoria County is affirmed.

¶ 48          Affirmed.