NOTICE

Decision filed 07/17/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240851-U

NO. 5-24-0851

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-1006 |
| | ) | |
| JOHN YARBROUGH, | ) | Honorable |
| | ) | Leah A. Captain, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1  *Held*: Where the defendant did not make a substantial showing of a constitutional violation, and there is no reasonably meritorious argument to the contrary, appointed appellate counsel is granted leave to withdraw, and the circuit court's judgment, dismissing the defendant's postconviction petition at the second stage of proceedings, is affirmed.

¶ 2  After a guilty plea, the defendant, John Yarbrough, was found guilty of two counts of aggravated criminal sexual assault, a felony pursuant to section 11-1.30(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.30(a)(1) (West 2014)). The circuit court sentenced him to 10 years' imprisonment in the Illinois Department of Corrections (IDOC) on each count, to be served consecutively, and a term of mandatory supervised release of 3 years to life, as determined by IDOC. The defendant filed a postconviction petition asserting improper admonishments and

1

ineffective assistance of plea counsel. The circuit court dismissed the petition at a second-stage hearing. The defendant appeals from that second-stage dismissal.

¶ 3 The Office of the State Appellate Defender (OSAD) represents the defendant in this appeal. OSAD has concluded that the appeal presents no issue of arguable merit, and accordingly it has filed a motion to withdraw as counsel, along with a memorandum of law in support thereof. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *People v. Lee*, 251 Ill. App. 3d 63 (1993). OSAD served the defendant with a copy of the motion and memorandum, and this court gave him ample time to respond, but he failed to do so. Having examined the *Finley* motion and memorandum, as well as the entire record on appeal, this court agrees that this appeal is meritless. OSAD's *Finley* motion must be granted, and the judgment of the circuit court must be affirmed.

¶ 4                                  I. BACKGROUND

¶ 5 In 2015, the State charged the defendant with four counts of aggravated criminal sexual assault, two counts of home invasion, and one count of residential burglary. The public defender was appointed to represent the defendant.

¶ 6 On June 30, 2016, the defendant, his public defender, and a prosecutor appeared before the circuit court. The prosecutor announced an agreement in which the defendant would plead guilty but mentally ill pursuant to section 115-2 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-2 (West 2014)), to two counts of aggravated criminal sexual assault pursuant to section 11-1.30(a)(1) of the Criminal Code (720 ILCS 5/11-1.30(a)(1) (West 2014)). The defendant would be sentenced to 10 years of imprisonment on each of those two counts, to be served consecutively as required by section 5-8-4(d)(2) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4(d)(2) (West 2014)), he would be required to serve at least 85% of his sentence pursuant to section 3-6-3(a)(2)(ii) of the Code (*id.* § 3-6-3(a)(2)(ii)), and he would be required to register for life as a sex

offender and a sexual predator pursuant to the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2014)). The remaining counts of the information would be dismissed.

¶ 7        The circuit court admonished the defendant about the nature of the charges and the range of possible prison sentences for those charges, in accordance with Illinois Supreme Court Rule 402(a)(1) and (2) (eff. July 1, 2012). The defendant was advised that after completing the prison sentence with the IDOC, he would serve a term of three years to natural life of mandatory supervised release (MSR) pursuant to section 5-8-1 of the Code (730 ILCS 5/5-8-1(d)(4) (West 2014)), with the exact MSR term to be determined at the discretion of the IDOC. The defendant indicated his understanding of those admonishments.

¶ 8        The circuit court admonished the defendant about his rights in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012), and the defendant indicated his understanding. The circuit court imposed the agreed-upon consecutive prison sentences of 10 years for each count, to be followed by an MSR term of 3 years to natural life, as determined by the IDOC. The circuit court certified that the defendant was a sex offender and a sexual predator. Finally, the circuit court admonished the defendant about filing a motion to withdraw his plea and about his right to appeal, and the defendant indicated his understanding. See Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001). A written judgment and sentence was entered.

¶ 9        The trial court did not admonish the defendant about the various requirements and restrictions that apply to a sex offender's place of residence during his term of MSR. There also was no mention that an indigent sex offender, who could not afford to buy or rent an MSR-compliant residence, could be found in violation of the conditions of his MSR and would need to remain imprisoned, perhaps for the duration of his MSR term.

3

¶ 10    The defendant did not attempt a direct appeal. On April 10, 2017, the defendant filed a *pro se* petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). In September 2019, the circuit court held a hearing on the State's motion to dismiss the amended postconviction petition. The circuit court entered a written order that granted the State's motion to dismiss.

¶ 11    The defendant appealed the dismissal of his petition, and this court reversed the order granting the State's motion to dismiss. On remand, a newly appointed postconviction counsel filed, on January 3, 2024, an amended postconviction petition on behalf of the defendant. This is the pleading at issue in the instant appeal. The amended postconviction petition set forth a few different constitutional claims, all of which revolved around the danger that the defendant may be required to serve his term of MSR in prison rather than in the community. The requirement could be based on the defendant's inability to obtain a residence that met all the legal requirements and restrictions applicable to a sex offender on MSR. Attached to the amended petition were exhibits indicating that the defendant was indigent and homeless. The State filed a motion to dismiss the defendant's amended postconviction petition. In May 2024, the circuit court held a hearing on the State's motion, hearing arguments from the State and the defendant's postconviction counsel.

¶ 12    On June 21, 2024, the circuit court entered a written order that granted the State's motion, dismissing the defendant's amended postconviction petition. The circuit court stated, *inter alia*, that the defendant's being forced to serve his MSR term in prison was merely a possibility, not a certainty. The circuit court noted that the defendant's projected parole date was August 11, 2032, and that the IDOC therefore "still has over eight years to develop plans, create programs and attempt to obtain additional funding" to obviate the need of the defendant's serving his MSR term

4

while imprisoned. The defendant appealed from the order. OSAD was appointed to represent him on appeal.

¶ 13                                       II. ANALYSIS

¶ 14    This appeal is from the circuit court's second-stage dismissal of the defendant's amended petition for postconviction relief. This court takes as true all of the petition's well-pleaded facts that are not positively rebutted by the record, and it reviews the circuit court's dismissal *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 15    OSAD has concluded that the instant appeal lacks merit, and has filed a *Finley* motion to withdraw as appellate counsel. In the legal memorandum that accompanies its *Finley* motion, OSAD states that the sole potential issue in this appeal is whether the circuit court erred in dismissing the amended postconviction petition at the second stage. OSAD breaks this potential issue into four potential sub-issues. This court will discuss each potential sub-issue.

¶ 16    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a procedural mechanism by which a criminal defendant may assert a substantial denial of his federal or state constitutional rights in the proceedings that resulted in his conviction. *Id.* § 122-1(a)(1). There are, potentially, three stages in a proceeding brought pursuant to the Act. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 17    At the first stage, the defendant files a postconviction petition, with accompanying documentation, in the circuit court. 725 ILCS 5/122-1(b), 122-2 (West 2022). The circuit court has 90 days to determine whether the petition is frivolous or patently without merit, and if it is, the circuit court must dismiss the petition. *Id.* § 122-2.1(a)(2). If the petition is not dismissed, it is docketed for further consideration. *Id.* § 122-2.1(b). Thus, the petition enters the second stage of postconviction proceedings. *Edwards*, 197 Ill. 2d at 245. Counsel is appointed for the defendant if

he is indigent. 725 ILCS 5/122-4 (West 2022). At that point, the State either answers the petition or moves to dismiss it. *Id.* § 122-5. The circuit court must determine whether the petition, and any accompanying documentation, make a "substantial showing" of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. The court may not engage in any fact-finding at the second stage, because all well-pleaded facts are to be taken as true, and liberally construed, at this point in the proceeding. *People v. Coleman*, 183 Ill. 2d 366, 380-82 (1998). The "substantial showing" that must be made is that the well-pleaded allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *People v. Domagala*, 2013 IL 113688, ¶ 35. If a substantial showing is not made, the petition is dismissed. *Edwards*, 197 Ill. 2d at 246. However, if a substantial showing is made, the petition advances to the third stage, where the circuit court conducts an evidentiary hearing, receiving evidence by oral testimony, etc. 725 ILCS 5/122-6 (West 2022); *Edwards*, 197 Ill. 2d at 246.

¶ 18    Appellate counsel identifies one potential issue but contends that it does not have arguable merit. The potential issue is whether the circuit court erred when it dismissed the defendant's amended postconviction petition at the second stage of postconviction proceedings. OSAD identifies four potential sub-issues, including (1) whether the defendant's guilty plea was knowing, voluntary, and intelligent; (2) whether the defendant's guilty plea was entered on a misapprehension of the facts and/or the law; (3) whether the defendant's guilty plea was based on a unilateral mistake of fact; and, (4) whether the defendant's guilty plea was entered based upon the ineffective assistance of counsel.

¶ 19    At the heart of the defendant's claims of error is the prospect that the defendant, at the time he becomes eligible for release to MSR, may be financially unable to purchase or rent a residence that complies with all the requirements and restrictions for a sex offender on MSR. As a

6

consequence of that inability, the defendant would be in violation of his MSR conditions and would need to remain in prison past his MSR date, potentially for his natural life. Such a scenario has resulted in litigation in the Illinois and federal courts. See *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 17 (collecting cases).

¶ 20     OSAD, in its legal memorandum supporting the *Finley* motion in the instant appeal, discusses the case of *Murphy v. Raoul*, 380 F. Supp. 3d 731 (N.D. Ill. 2019). In *Murphy*, a class of indigent sex offenders filed a lawsuit under section 1983 of Title 42 of the United States Code (42 U.S.C. § 1983) against the Illinois Attorney General and the Director of the IDOC. The class alleged that the way the defendants implemented Illinois's statutory scheme governing MSR for sex offenders violated the plaintiffs' constitutional rights by subjecting them to indefinite imprisonment due to their inability to secure qualifying MSR host sites. *Murphy*, 380 F. Supp. 3d at 738, 750.

¶ 21     The *Murphy* court held that the defendants implemented the statutory scheme at issue in a way that violated the plaintiffs' rights to equal protection by "creat[ing] an illegal classification based on wealth, which indefinitely deprive[d the plaintiffs] of their liberty as a result of their incapacity to pay." *Id.* at 759. The *Murphy* court also held that the requirement that plaintiffs find a compliant host site before being released from prison onto MSR violated the eighth amendment as applied to the plaintiffs because it punished them for their homeless status through prolonged incarceration. *Id.* at 764. The court reserved its ruling on the proper remedy and subsequently entered a permanent injunction, directing the defendants to submit a compliance plan outlining steps to ensure that no member of the plaintiff class remained in prison due to an inability to locate an MSR host site by October 31, 2021. *Id.* at 766; *Murphy v. Raoul*, 2021 WL 12306062, at *1 (N.D. Ill. Sept. 29, 2021).

7

By June 21, 2024, the date the circuit court dismissed the defendant's latest amended petition, the danger of discrimination against indigent and homeless sex offenders was greatly reduced. See *Stone v. Jeffreys*, No. 21 C 5616, 2022 WL 4596379, at \*1 (N.D. Ill. Aug. 30, 2022), *dismissed*, No. 22-2733, 2023 WL 2658354 (7th Cir. Mar. 20, 2023).

¶ 22    At most, *Murphy* could support an argument that an incarcerated sex offender subject to an indeterminate MSR term who has been held past the expiration of his or her determinate prison sentence should be released onto MSR if his prolonged incarceration is due solely to indigency and/or homelessness. The circuit court was correct in indicating, in its written order of June 21, 2024, that there was a mere possibility, and not a certainty, that the defendant would have to remain in prison beyond his MSR date. Given that the defendant is not scheduled to begin MSR until August 11, 2032, the IDOC has more than adequate time to find a solution to the problem of where the defendant can reside during MSR. Appellate counsel concedes that IDOC has proved proficient at addressing this problem.

¶ 23                    A. Knowing, Voluntary and Intelligent Plea

¶ 24    The first potential sub-issue raised by OSAD in its *Finley* memorandum is whether the defendant's convictions should have been vacated because his guilty pleas were not voluntary, knowing, and intelligent. The defendant could argue that his pleas were invalid due to the circuit court's failure to fully admonish him, prior to accepting his pleas, on the subject of the housing requirements of MSR for sex offenders.

¶ 25    A guilty plea involves the waiver of constitutional rights, and therefore a guilty plea, to be valid, must be made voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States*, 397 U.S. 742, 748 (1970).

8

A defendant may seek relief from his guilty plea if the plea was not made "with full knowledge of the consequences." *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005).

¶ 26    However, not all "consequences" are treated the same. Generally, due process requires that in order for a defendant to knowingly and voluntarily plead guilty, a defendant must be advised of the direct consequences of a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 35. A direct consequence of a guilty plea is defined as one which has a definite, immediate, and largely automatic effect on the range of a defendant's sentence. *Id.* Thus, a trial court's obligation to ensure that a defendant understands the direct consequences of his plea encompasses those consequences that affect the defendant's sentence and other punishment that the circuit court may impose. *Id.* Collateral consequences are different. Due process does not require the court to ensure the defendant be informed of the collateral consequences of a guilty plea. *People v. Delvillar*, 235 Ill. 2d 507, 520-21 (2009). Collateral consequences are effects upon the defendant that the circuit court has no authority to impose, resulting from an action that may or may not be taken by an agency that the circuit court does not control. *Id.* at 520.

¶ 27    The trial court is only required to inform a defendant of the MSR term itself because it is part of the sentence imposed by the court, *i.e.*, it is a direct consequence of the defendant's plea. *People v. Williams*, 2019 IL App (3d) 160412, ¶ 27. Whether a defendant could be subject to incarceration during any portion of his MSR term is a "collateral consequence" of the plea, and the trial court is not required to inform a defendant of that consequence prior to accepting the plea. *Id.*

¶ 28    Here, the defendant claimed that his convictions should be vacated because his guilty plea was invalid where the circuit court failed to admonish him that as a sex offender, he faced an array of requirements and restrictions regarding where he could reside during his MSR term, and that

his indigency could prevent him from obtaining a suitable residence, perhaps requiring him to serve his MSR term in prison instead of in the community. The conditions of the defendant's MSR are to be determined by the Prisoner Review Board (see 730 ILCS 5/3-3-7 (West 2024)), an agency that is outside the circuit court's control. See *Delvillar*, 235 Ill. 2d at 520. As the issue was a collateral consequence of his plea, the circuit court was not required to inform him of that consequence prior to accepting his plea. See *Williams*, 2019 IL App (3d) 160412, ¶ 27.

¶ 29    The record shows that the circuit court properly admonished the defendant about the direct consequences of his plea—the consequences that the circuit court imposed—which is all the circuit court was required to do in this regard. See *id*. Nothing about the circuit court's admonishments to the defendant rendered his guilty plea invalid.

¶ 30                    B. Misapprehension of the Facts or Law

¶ 31    The second potential sub-issue raised by OSAD is whether the defendant's guilty plea should be vacated because it was entered on a misapprehension of the facts or the law. A defendant does not have a right to withdraw his guilty plea. *People v. Hillenbrand*, 121 Ill. 2d 537, 545 (1988). Leave to withdraw a guilty plea should be granted if, for example, it was entered on a misapprehension of the facts or the law. *People v. Davis*, 145 Ill. 2d 240, 244 (1991).

¶ 32    The defendant alleged in his amended postconviction petition that he was unaware, at the time he entered his plea, that his inability to afford a suitable residence could result in his remaining in prison beyond his MSR date. He further argued that the plain meaning of the term "mandatory supervised release" would lead a reasonable person to conclude that, in fact, he would be released upon the completion of his prison term. The argument was premised on the notion that the defendant, an indigent sex offender, was highly likely to be held in prison well past his MSR date.

10

With the permanent injunction entered in the *Murphy* case, there seems to be little chance that the defendant will be held well past his August 11, 2032, MSR date.

¶ 33                                        C. Unilateral Mistake of Fact

¶ 34     The third potential sub-issue raised by the defendant is whether the defendant's guilty plea should be vacated because it was based on a unilateral mistake of fact. Plea agreements have often been compared to enforceable contracts, and Illinois courts have applied contract-law principles in appropriate circumstances. *People v. Donelson*, 2013 IL 113603, ¶ 18. Illinois recognizes the right to rescind a contract based upon unilateral mistake. *Brzozowski v. Northern Trust Co.*, 248 Ill. App. 3d 95, 100 (1993). "There are three conditions necessary before a contract will be rescinded for a mistake by one of the parties. First, the mistake must relate to a material feature of the contract; second, it must have occurred despite the exercise of reasonable care; and third, the other party must be placed in status quo." *John J. Calnan Co. v. Talsma Builders, Inc.*, 67 Ill. 2d 213, 218 (1977). A fourth condition for rescission is sometimes listed—whether the mistake "is of such grave consequence that enforcement of the contract would be unconscionable." *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 273 (1999).

¶ 35     Here, the argument that the defendant's unilateral mistake in fact relates to a "material feature" of the plea agreement has been greatly diminished. Due to the *Murphy* litigation, there seems to be little danger that the defendant will be held in prison past his MSR date of August 11, 2032, due to his financial inability to obtain an MSR-compliant residence. As stated in its *Finley* legal memorandum, "[OSAD] can no longer present, in this appeal, a sound and persuasive legal argument that [the defendant's] guilty plea should be vacated based on the contract doctrine of unilateral mistake."

11

¶ 36                              D. Ineffective Assistance of Counsel

¶ 37    The fourth sub-issue raised by the defendant is whether the defendant's guilty plea should be vacated based on the claim that he had ineffective assistance of plea counsel. Claims of ineffective assistance of counsel are resolved under the two-pronged standard articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a standard adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525-24 (1984).

¶ 38    To establish ineffective assistance, the defendant must show both (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Counsel's performance is considered deficient if his acts or omissions "were outside the wide range of professionally competent assistance" when "viewed as of the time of counsel's conduct." *Id.* at 690. The defendant was prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant must satisfy both prongs of the *Strickland* standard; "the failure to establish either precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 24.

¶ 39    The *Strickland* standard applies to a claim that plea counsel was ineffective during the guilty-plea process. *People v. Brown*, 2017 IL 121681, ¶ 25. However, for purposes of the second prong of the *Strickland* standard, a defendant who has pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial in insufficient to establish prejudice." *People v. Valdez*, 2016 IL 119860, ¶ 29. Rather, the defendant "must

convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.*

¶ 40    The defendant's amended postconviction petition contained *two* claims of ineffective assistance of plea counsel. The first of these claims was that plea counsel had been ineffective for failing to file a motion to withdraw guilty plea—on the grounds that the plea was involuntary, unknowing, and unintelligent—despite the defendant's request that counsel file such a motion. According to the defendant, the plea was invalid because, at the time he entered the plea, he did not know that he could be kept in prison past his MSR date because of his financial inability to obtain an MSR-compliant residence.

¶ 41    "To establish prejudice at the second stage of postconviction proceedings, a postconviction petition must not only allege grounds that could have been presented in a motion to withdraw the guilty plea but also show a reasonable probability the motion would be granted on those grounds." *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 30. Here, there was no reasonable probability that the motion would have been granted on the grounds alleged. For the reasons stated above (see discussion of the *Murphy* litigation), there was little danger that the defendant's inability to obtain an MSR-compliant residence would keep him in prison past his August 11, 2032, MSR date. Likewise, the defendant's being unaware of that danger would not have invalidated his plea, and a motion on those grounds would not have been granted.

¶ 42    The second of the defendant's two ineffective-assistance claims was that plea counsel had failed to warn the defendant about a serious collateral consequence of his plea, namely, his continued imprisonment past his MSR date due to his financial inability to obtain an MSR-compliant residence. Our supreme court has stated that plea counsel may have a duty under the sixth amendment to inform a defendant of a collateral consequence of his plea "where the

consequence is severe, certain, and sufficiently enmeshed in in the criminal process," and that counsel's failure to do so "may give rise to a basis for withdrawing a plea." *Hughes*, 2012 IL 112817, ¶ 59 (relying on *Padilla v. Kentucky*, 559 U.S. 356, 365-66 (2010)). While the collateral consequence of the defendant's continued imprisonment is severe and enmeshed in the criminal process, it is not certain and has become unlikely. As OSAD concedes, "it is now far from certain" that the defendant will remain imprisoned beyond his MSR date, "even after taking his indigence and homelessness into consideration." Plea counsel did not have a duty, under *Hughes*, to inform the defendant that there was a mere possibility of his being imprisoned past his MSR date.

¶ 43 Furthermore, for purposes of the prejudice prong of the *Strickland* standard, there is no reasonable probability that if counsel had warned the defendant about the dangers of remaining imprisoned past his MSR date, the defendant would have pleaded not guilty and would have insisted on going to trial. See *Hill*, 474 U.S. at 59. The danger that an indigent prisoner will remain imprisoned past his MSR date, for lack of an MSR-compliant residence, has become so small that it would not factor into a decision on whether to plead guilty, at least not in any material way.

¶ 44                                    III. CONCLUSION

¶ 45 The circuit court did not err in dismissing the defendant's amended postconviction petition at the second stage of postconviction proceedings. The defendant simply failed to make a substantial showing of a constitutional violation, and there is no reasonably meritorious argument to the contrary. Accordingly, OSAD's motion for leave to withdraw as appellate counsel is granted, and the judgment of the circuit court is affirmed.

¶ 46 Motion granted; judgment affirmed.